UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EARLINE SKATES,

                              Plaintiff,

          -against-

INCORPORATED VILLAGE OF FREEPORT,

                              Defendant.
-------------------------------------------------------------X

**OPINION AND ORDER**
15-cv-1136 (SJF)(AYS)

FILED
CLERK

4:05 pm, Jun 28, 2017

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**FEUERSTEIN, District Judge:**

Plaintiff Earline Skates ("Plaintiff" or "Skates") commenced this action against Defendant Incorporated Village of Freeport ("Defendant" or the "Village"), seeking redress for:  (i) racial discrimination, retaliation, and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*; (ii) violation of 42 U.S.C. § 1981; (iii) retaliation pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; (iv) discrimination pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 *et seq.*; (v) First Amendment retaliation pursuant to 42 U.S.C. § 1983; and (vi) racial discrimination and retaliation pursuant to the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 291 *et seq.  See* Docket Entry ("DE") [1].  Presently before the Court is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56, which Plaintiff opposes. DE [36], [47].  For the reasons set forth herein, Defendant's motion is granted in its entirety.

1

## I.    BACKGROUND

### A.  <u>Factual Background</u>[1]

#### 1.   <u>The Parties and Plaintiff's Employment for the Village</u>

Plaintiff Earline Skates is a disabled African-American woman who resides in Freeport, New York.  Compl., DE [1], ¶¶ 8, 19.  According to Plaintiff, Skates "suffered from a qualified disability following [an] injury sustained to her right wrist."  *Id.* at ¶ 20.  Defendant Village of Freeport is a municipal entity in the State of New York, with its headquarters located at 46 N. Ocean Avenue, Freeport, New York.  *Id.* at ¶ 10.  At all relevant times, the Village was Plaintiff's employer as defined and codified within the meaning of Title VII, the ADA, and the FMLA.  *Id.* at ¶ 17.  On or about July 8, 2010, the Village hired Plaintiff as a "Seasonal Laborer."  Def.'s 56.1 Stmt. ¶ 1; Kirwan Decl. Ex. A.  At the time Skates was hired in July 2010, non-party Andrew Hardwick was the Village's Mayor.  Def.'s 56.1 Stmt. ¶ 1.  As Plaintiff's appointment as a Seasonal Laborer was temporary, on approximately October 7, 2010, Plaintiff applied for, and was hired as, a part-time "Laborer" for the Village.  *Id.* at ¶ 2; Kirwan Decl. Ex. B.  Plaintiff worked as a part-time Laborer for the Village until approximately May 2012.  Def.'s 56.1 Stmt. ¶ 3.

Although Skates disputes that she worked as a "Recreation Attendant" for the Village prior to April 3, 2013, *see* Pl.'s 56.1 Stmt. ¶¶ 9-11, the evidence establishes that, on May 18, 2012, Plaintiff applied for a position as a Recreation Attendant in the Freeport Recreation Center (the "FRC").  *See* Kirwan Decl. Ex. C.  The evidence further establishes that, on June 8, 2012, Plaintiff was appointed to the position of Recreation Attendant in the FRC, and that Hardwick authorized

---

[1] Unless otherwise noted, the facts are drawn from Defendant's Local Civil Rule 56.1 Statement of Undisputed Facts ("Def.'s 56.1 Stmt."), DE [36-2]; the Declaration of Conor Kirwan in Support of Defendant's Summary Judgment Motion ("Kirwan Decl."), DE [36-3]; the Declaration of Deanna D. Panico in Support of Defendant's Motion for Summary Judgment ("Panico Decl."), DE [36-4]; Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Pl.'s 56.1 Stmt."), DE [48]; and the Declaration of Chauncey D. Henry in Opposition to Defendant's Motion for Summary Judgment ("Henry Decl."), DE [49].

Plaintiff's appointment. *Id.*; *see also* Def.'s 56.1 Stmt. ¶ 4; Panico Decl. Ex. B ("Pl.'s Dep.") at 69:17-24. Pursuant to a Civil Service Class Specification for Recreation Attendant ("Recreation Attendant Specification"), a Recreation Attendant "[p]erforms routine duties related to the conduct of a recreation activity, or to the care of a physical facility while in use; performs related duties as required." Def.'s 56.1 Stmt. ¶ 5. The Recreation Attendant Specification further provides that a Recreation Attendant "maintains order while recreational activities are in session," "[m]aintains and supervises the use of recreational facilities," and "[m]aintains and repairs equipment used at a recreational facility." *See* Kirwan Decl. Ex. D.

Although Skates claims that she worked as a "permanent clerk" in the Village's Assessor's Office beginning in approximately 2012, *see* Pl.'s 56.1 Stmt. ¶ 1, she testified that she did not actually apply for a position in the Assessor's Office, and that she was asked "to help out in the Assessor's Department because they were shorthanded . . . ." Pl.'s Dep. 48:19-25, 50:1-9. Furthermore, it is undisputed that, unlike the position of Recreation Attendant, the position of Clerk requires passing a civil service examination, and that Plaintiff neither took nor passed a civil service examination. *See* Def.'s 56.1 Stmt. ¶ 7; *see also* Kirwan Decl. ¶ 7; Pl.'s Dep. 76:21-23.

## 2. Plaintiff's Protected Activities

Skates alleges that, while employed by the Village, she engaged in two (2) categories of activities protected by the First Amendment's right to associate and right to free speech. Specifically, Plaintiff alleges that: (i) she attended the Village's 2012 Memorial Day parade in order to collect signatures in support of a local campaign "aimed at keeping broadcasts of the Village Board of Trustees meetings on local public access television"; and (ii) "made clear her support for Mayor Andrew Hardwick" in the Village's 2012 mayoral election and "that she was

involved in gathering information regarding the residency of Hardwick's opponent." Pl.'s 56.1 Stmt. ¶¶ 2, 7.

i. *2012 Memorial Day Parade*

On approximately May 28, 2012, Plaintiff attended the Village's Memorial Day parade, where she "collected signatures in support of a local campaign known as Resolution 18/44," which was a resolution "aimed at keeping broadcasts of the Village Board of Trustees meetings on local public access television." *Id.* at ¶ 2. According to Skates, two (2) Village trustees—non-parties Jorge Martinez and Carmen Pineyro—observed Plaintiff collecting signatures at the Memorial Day parade. *Id.* at ¶ 3. Skates claims that Martinez and Pineyro disapproved of her collecting signatures and "later instructed Scott Richardson Village Superintendent of Public Works to order [Plaintiff] to stop collecting signatures." *Id.* Although Plaintiff does not claim that she was required to stop collecting signatures at the parade, at a June 2012 meeting of the Village's Board of Trustees, Martinez and Pineyro "voiced their disapproval, and further commented that [Plaintiff] should no longer be employed by the Village of Freeport." *Id.* at ¶¶ 4-5. Plaintiff does not claim that she was terminated from her employment or otherwise reprimanded as a result of her activities at the 2012 Memorial Day parade. Nevertheless, approximately three (3) months after the parade, Plaintiff filed a complaint with the New York State Department of Human Rights alleging, *inter alia*, that she was "subject to discriminatory employment practices on account of her first amendment conduct." *Id.* at ¶ 6.

ii. *Support for Hardwick's Mayoral Campaign*

In addition to collecting signatures at the Memorial Day parade, while still employed by the Village, Plaintiff "made clear her support for Mayor Andrew Hardwick in the upcoming mayoral election . . . ." *Id.* at ¶ 7. As part of her support for Hardwick's campaign, Plaintiff

assisted in "gathering information regarding the residency of Hardwick's opponent, Robert T. Kennedy, who was rumored to be living in Lynbrook, New York, rather than in the Village of Freeport." *Id.* In addition to investigating Kennedy's residency, Skates also reviewed Kennedy's petition for candidacy for discrepancies by comparing the petition to the Village's voter registration book. Pl.'s Dep. 106:7-13. As a result of her investigation, Skates uncovered "discrepancies in Robert T. Kennedy's property" and found "illegal signatures in connection with his election, and his petition, all of which were records that were publically available." Pl.'s 56.1 Stmt. ¶ 8. According to Plaintiff, she "reviewed the petitions that were questionable in the presence of employees of the Village of Freeport, and utilized the workplace computer to print the questionable records out." *Id.*

### 3. Transfer Back to Recreation Center

Kennedy ultimately won the election, and, upon assuming office in March 2013, he discovered that "many employees under the former mayor, Andrew Hardwick, were working out-of-title." Def.'s 56.1 Stmt. ¶ 8. As the New York Civil Service Law prohibits employees from working out-of-title, Kennedy "transferred all of those employees, previously working out of title, back to their respective, proper positions." *Id.* at ¶ 9. Kennedy determined that Skates was one such employee who was working out-of-title, and "in or about April 2013, Ms. Skates was transferred to the Recreation Center to fill her position as Recreation Attendant, which was the title Ms. Skates held since June of 2012."[2] *Id.* at ¶¶ 8, 10. Although Plaintiff claims that she "did not apply for this involuntary transfer or demotion," and that the transfer was "instituted as a form of punishment by then mayor Robert T. Kennedy," *see* Pl.'s 56.1 Stmt. ¶ 10, Skates admitted that

---

[2] Based upon the record before the Court, it is unclear when, and to what capacity, Skates previously left her position as Recreation Attendant in the FRC.

she had "no idea" whether Kennedy had any knowledge of her political activities in support of Hardwick.  Def.'s 56.1 Stmt. ¶ 12; *see also* Pl.'s Dep. 106:19-24.

It is undisputed that Plaintiff was not the only employee transferred when Kennedy assumed office, and that, upon being transferred back to the FRC, Plaintiff did not suffer any diminution in salary.  Pl.'s 56.1 Stmt. ¶ 12; *see also* Def.'s 56.1 Stmt. ¶ 11.  However, Skates claims that upon transfer to the FRC, "her duties . . . differed completely from those at [the] Village Assessor's office."  Pl.'s 56.1 Stmt. ¶ 12.  Specifically, Plaintiff claims that, whereas her position in the Assessor's Office "was an administrative position," her "work at the Freeport Recreation Center was janitorial in nature."  *Id.*  According to Plaintiff, her duties at the FRC included "sweeping, dusting, painting, cleaning recreation center equipment, mopping floors, cleaning paint off of walls and tables, cleaning bathrooms, and cleaning the Freeport Recreation Center parking lot."  *Id.*  Skates further claims that, upon being transferred to the FRC, she "began to suffer from particular acts of mistreatment by her last supervisor, Freeport Recreation Center manager Victoria Dinielli."  *Id.* at ¶ 13.  Specifically, Plaintiff claims that Dinielli:  (i) wrongfully discussed personal matters in the presence of Plaintiff's co-worker; (ii) wrongfully stripped Plaintiff of accumulated "comp time" at the instruction of the Village's Executive Director of Human Resources Conor Kirwan; (iii) moved her to the less desirable position of cleaning the exercise room at the FRC; (iv) denied Plaintiff a key card allowing access to an employee parking lot; (v) threatened to take away accumulated vacation days and comp time for failure to produce her attendance card; (vi) wrongfully wrote Plaintiff up for insubordination; and (vii) changed Plaintiff's work schedule to include Sunday shifts.  *Id.* at ¶¶ 13-20.

4.  <u>Plaintiff's Insubordination, Absences, and Termination</u>

According to Defendant, upon being transferred to the FRC, "Ms. Skates began her recalcitrant behavior toward her supervisors." Def.'s 56.1 Stmt. ¶ 13.  On approximately April 16, 2013, Plaintiff "asked Victoria Dinielli to do a favor for [her]" and "write a letter to Human Resources for a key car[d] so that [Plaintiff] [could] park in the employee parking lot."  Henry Decl. Ex. L.  According to Defendant, when Dinielli declined to issue Plaintiff a key card, Skates "engaged in gross insubordination and demonstrated serious disrespect toward her supervisor" by "yell[ing] and point[ing] her finger at Ms. Dinielli." Def.'s 56.1 Stmt. ¶ 13.  Plaintiff does not dispute that she pointed and waived her finger at Dinielli and that she walked out of Dinielli's office despite Dinielli instructing her to come back.  Pl.'s Dep. 149:16-150:9.  As a result of Plaintiff's actions towards Dinielli, she was directed to attend Employee Assistance Program counseling.  Def.'s 56.1 Stmt. ¶ 13; *see also* Kirwan Decl. Ex. E.

In addition to the foregoing incident with Dinielli, on several occasions, Plaintiff either failed to report to work or failed to inform the Village that she would be absent from work prior to the start of her shift.  Def.'s 56.1 Stmt. ¶¶ 14-20.  Skates did not appear for work on June 7, 2013, and, after failing to return to work by June 10, 2013, "the village requested information as to the reason for [her] absence." *Id.* at ¶ 14; *see also* Henry Decl. Ex. T.  In response, on June 19, 2013, Skates provided medical notes from her doctors that "contained no information regarding Ms. Skates' medical condition." Def.'s 56.1 Stmt. ¶ 14; *see also* Henry Decl. Ex. U.  Although one such note stated that Plaintiff was able to return to work on June 19, 2013, she did not return to work on that day, and, "for nearly two weeks after Ms. Skates was scheduled to return to work, the Village never heard from [her]." Def.'s 56.1 Stmt. ¶¶ 14-15.  According to Defendant, "Ms. Skates continued to be out of work from June 19, 2013 through July 3, 2013 without even so much

as a phone call to the Village." *Id.* at ¶ 15. Accordingly, on July 3, 2013, the Village sent Plaintiff a letter informing her that if she "failed to return to return to work on July 8, 2013, [she] would be considered to have abandoned her job." *Id.* at ¶ 17. As a result of her absences, on July 9, 2013, Plaintiff "was disciplined with a suspension of two days." *Id.* at ¶ 18; *see also* Kirwan Decl. Ex. I. Although Skates ultimately returned to work at the FRC, she continued to violate the Village's absence policy by failing to inform the Village that she would be absent from work prior to her shifts on July 16, 2013, September 21, 2013, September 23, 2013, September 27, 2013, October 10, 2013, October 17, 2013, and October 22, 2013. Def.'s 56.1 Stmt. ¶¶ 19-20.

Finally, at an October 2013 Village staff meeting, two (2) FRC employees "informed the Village that Ms. Skates had been engaged in a campaign of discriminatory hostility toward her co-workers and toward patrons of the recreational facility since she began working at the Recreation Center." *Id.* at ¶ 21. Specifically, Plaintiff's co-workers Annique Adams and Vicki Groden provided written statements to the Village stating that Plaintiff: (i) told Adams, "you can't trust white people"; (ii) referred to Adams as a "whitey lover"; (iii) criticized Groden for taking tomatoes from a white person, stating "I can't believe you'll take food from a white person"; (iv) referred to a Hispanic co-worker as a "spickola"; and (v) referred to a patron of the FRC as a "Jew bitch." *Id.* at ¶¶ 22-27; *see also* Kirwan Decl. Ex. K.

As a result of Plaintiff's insubordination, absences, and discriminatory statements, Plaintiff was discharged from her employment with the Village. *See* Def.'s 56.1 Stmt. ¶ 28; *see also* Kirwan Decl. Ex. L. In an October 22, 2013 Charges and Specifications (the "Charges and Specifications"), the Village identified eleven (11) charges forming the basis for Plaintiff's termination, including Plaintiff's: (i) failures to report for work as scheduled; (ii) failures to notify the Village that she would be absent from work prior to the start of her shift; and (iii) discriminatory

statements to her co-workers and FRC patrons. *Id.* Plaintiff arbitrated her dismissal through her union, whereat she was represented by an attorney and union representative. Def.'s 56.1 Stmt. ¶ 31. In a May 14, 2014 Opinion and Award of Arbitrator, the arbitrator observed, *inter alia*, that "[i]t is fundamental that to be a worthwhile employee one must be more than just technically proficient at his/her tasks; the employee must maintain a good time and attendance record." Kirwan Decl. Ex. M at 26. The arbitrator further opined that, "[a]s awful as [Plaintiff's] attendance record was, it pale[d] in comparison to the gross misbehavior she engaged in when speaking about fellow employees and patrons." *Id.* Accordingly, the arbitrator held that, "[b]ased on the credible evidence presented . . . [Plaintiff] was guilty of the misconduct charged and her dismissal [was] the appropriate penalty." *Id.* at 27.

**B. <u>Procedural Background</u>**

By way of a March 4, 2015 Complaint, Skates commenced this action against the Village, alleging causes of action arising under: (i) Title VII for racial discrimination, retaliation, and hostile work environment; (ii) 42 U.S.C. § 1981; (iii) the FMLA for retaliation; (iv) the ADA for discrimination; (v) 42 U.S.C. § 1983 for First Amendment retaliation; and (vi) the NYSHRL for racial discrimination and retaliation. DE [1]. According to Plaintiff, "Defendant engaged in discrimination by inflicting willful and deliberate disparate treatment of Plaintiff during the course of her employment, subjecting Plaintiff to a hostile work environment fraught with racial discrimination, wrongfully terminating the plaintiff for reasons driven by discriminatory animus based on Plaintiff's disability and/or perceived disability status and/or participation in protected activity." Compl. ¶ 1.

On September 14, 2015, Defendant filed a motion to dismiss Plaintiff's Complaint in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). DE [15]. In a January 28,

2016 Report and Recommendation (the "Report"), Magistrate Judge Anne Y. Shields recommended that Defendant's motion be:  (i) granted with respect to Plaintiff's claims arising under Title VII, the ADA, 42 U.S.C. § 1981, and the NYSHRL; and (ii) denied with respect to Plaintiff's claims arising under 42 U.S.C. § 1983 and the FMLA.  DE [18].  After neither party objected to Magistrate Judge Shields' Report, the Court adopted the Report in its entirety on April 12, 2016.  DE [19].  Therefore, the only claims remaining in this action are Plaintiff's claims for: (i) First Amendment retaliation pursuant to Section 1983, and (ii) FMLA retaliation.  *See Skates v. Inc. Vill. of Freeport*, No. 15-CV-1136, 2016 WL 1452391, at *2 (E.D.N.Y. Apr. 12, 2016) (denying Defendant's motion to dismiss "as to [Plaintiff's] Section 1983 claims of First Amendment retaliation and her claims pursuant to the FMLA").

On January 26, 2017, Defendant served Plaintiff with the instant motion for summary judgment pursuant to Fed. R. Civ. P. 56.  DE [31].  Plaintiff failed to serve opposition to Defendant's motion within the time allowed pursuant to the Court's Individual Rules of Practice, and the Village filed the instant motion with the Court as unopposed on February 14, 2017.  DE [36].  On February 21, 2017, the Court extended Plaintiff's deadline to file opposition to Defendant's motion until 9:00 a.m. on February 24, 2017.  DE [42].  After Plaintiff failed to file her opposition by 9:00 a.m. on February 24, 2017, Defendant filed a "Motion to Expedite," requesting that its motion for summary judgment be deemed unopposed.  DE [46].  On February 24, 2017, the Court granted Defendant's Motion to Expedite, writing, "[a]s Plaintiff both failed to timely oppose Defendant's motion for summary judgment and failed to adhere to this Court's February 21, 2017 Order directing Plaintiff to file any opposition to Defendant's motion by 9:00 a.m. on February 24, 2017, Defendant's motion for summary judgment will be treated as unopposed."  *See* Electronic Order, February 24, 2017.  Plaintiff filed an untimely opposition at

approximately 5:08 p.m. on February 24, 2017.  DE [47].  At a February 27, 2017 telephone conference, the Court informed the parties that it would consider Plaintiff's untimely opposition, and granted Defendant until March 3, 2017 to file a reply thereto.  DE [55].  Defendant filed its reply to Plaintiff's opposition on March 1, 2017.  DE [54].

In moving for summary judgment, Defendant argues, *inter alia*, that "Plaintiff cannot establish a *prima facie* case of retaliation because Plaintiff cannot prove a causal connection between her transfer to the Recreation Center and her campaigning on behalf of Andrew Hardwick."  *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), DE [36-1], at 3.  Defendant further argues that Plaintiff is unable to establish a claim under the FMLA because, *inter alia*, "Defendant has many, legitimate, non-retaliatory reasons for Plaintiff's suspension and her termination."  *Id.* at 7.  In opposition to Defendant's motion, Plaintiff argues, *inter alia*, that "the series of adverse actions complained of were in retaliation of her First Amendment political conduct, and in addition in meant [*sic*] to interfere with rights protected under FMLA in further retaliation under the FMLA."  *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), DE [47], at 7.

## II.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of establishing that there are no material facts that preclude judgment as a matter of law.  *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).  In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party

opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party."). In deciding a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

## III.   DISCUSSION

Defendant seeks judgment as a matter of law with respect to Plaintiff's remaining claims for First Amendment retaliation pursuant to Section 1983 and FMLA retaliation. *See Skates*, 2016 WL 1452391, at *2; *see also* Def.'s Mem. at 2-9. Defendant further argues that certain material upon which Plaintiff relies in opposing the instant motion is not properly before the Court. *See* Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment ("Def.'s Reply Mem."), DE [54], at 1-3. Applying the standards outlined above, and for the reasons set

forth herein, Defendant is entitled to judgment as a matter of law with respect to each of Plaintiff's remaining claims, and the Village's motion for summary judgment is therefore granted.

### A. **Procedural Issues**

As a preliminary matter, Defendant argues that Plaintiff's opposition to the instant motion is procedurally improper because:  (i) Plaintiff's Local Civil Rule 56.1 Statement fails to specifically controvert or address the facts asserted in Defendant's Local Civil Rule 56.1 Statement; (ii) the Henry Declaration is unsworn and "fails to comply with the statutory requirements for such a declaration"; and (iii) Plaintiff improperly relies upon both materials not produced during the course of discovery and an uncertified deposition transcript.  Def.'s Reply Mem. at 1-3.

#### 1.   Local Civil Rule 56.1 Statement

Pursuant to Local Civil Rule 56.1, "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civil Rule 56.1(a).  The party opposing summary judgment must submit a statement containing "correspondingly numbered paragraph[s] responding to each numbered paragraph in the statement of the moving party."  *Id.* at 56.1(b).  Where the nonmoving party fails to "specifically controvert[]" the facts in the moving party's Local Rule 56.1 statement, the facts contained in the moving party's Local Rule 56.1 statement "will be deemed to be admitted for purposes of the motion . . . ."  *Id.* at 56.1(c); *see also Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000) (affirming summary judgment where the plaintiff failed "to deny, in accordance with Rule 56.1 of the court's local rules, defendants' allegations"); *Young v. Nassau Univ. Med. Ctr.*, No. 10-CV-649, 2011 WL 6748500, at *1 n.2

(E.D.N.Y. Dec. 22, 2011) ("Generally, a plaintiff's failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed.") (internal quotation and alteration omitted).

As required pursuant to Local Rule 56.1, in support of its motion for summary judgment, Defendant submitted a Rule 56.1 Statement identifying facts supported by citations to record evidence. DE [36-2]. In opposition to Defendant's motion, Plaintiff failed to submit a statement containing "correspondingly numbered paragraph[s] responding to each numbered paragraph" in Defendant's Rule 56.1 Statement. *See* Local Rule 56.1(b). Rather, Plaintiff submitted her own Statement of Undisputed Material Facts Pursuant to Local Civil Rile 56.1. DE [48]. As Plaintiff failed to specifically controvert the facts in Defendant's Local Rule 56.1 Statement, the facts contained therein that are supported by record evidence are deemed admitted for purposes of the instant motion. *See Verlus v. Liberty Mut. Ins. Co.*, No. 14 Civ. 2493, 2015 WL 7170484, at *1 (S.D.N.Y. Nov. 12, 2015) ("Plaintiffs' failure to specifically controvert Defendant's Local Civil Rule 56.1 Statement requires this Court to deem Defendant's version of the facts admitted for purposes of this motion."); *Gadsden v. Jones Lang LaSalle Ams., Inc.*, 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002) ("Courts in this circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 Statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party."); *see also Eze v. Scott*, 11 F. Supp. 3d 376, 378 n.1 (E.D.N.Y. 2014) ("The Court will only deem admitted those facts in Defendants' Local Rule 56.1 Statement that are supported by admissible evidence in the record.").

14

### 2.   Unsworn Henry Declaration

In opposition to the instant motion, Plaintiff relies upon the Henry Declaration to introduce certain documents attached thereto.  DE [49].  According to Defendant, the Henry Declaration both "fails to comply with the statutory requirements for such a declaration" and "fails to meet the requirements for an attorney affirmation under New York State Law."  Def.'s Reply Mem. at 2.  Pursuant to 28 U.S.C. § 1746, where "any matter is required or permitted to be supported, evidenced, established, or proved by [a] sworn declaration, verification, certificate, statement, oath, or affidavit," the matter may be supported by an unsworn declaration, certificate, verification, or statement, so long as it is made under the penalty of perjury and states, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct."  28 U.S.C. § 1746(2).  The Henry Declaration is unsworn and fails to comply with 28 U.S.C. § 1746, as it is not made under the penalty of perjury.  DE [49].  Nevertheless, the Court may still consider the exhibits attached to the Henry Declaration, as Plaintiff relies upon the Henry Declaration for the limited purpose of introducing the documents, files, and records attached thereto, and not for the purpose of asserting or introducing independent facts.  *See Owens–Corning Fiberglass Corp. v. U.S. Air*, 853 F. Supp. 656, 663 (E.D.N.Y. 1994) (denying a motion to strike an unsworn declaration where it was used "to identify and introduce into evidence the exhibits annexed thereto").  Therefore, the Court may consider the exhibits attached to the Henry Declaration insofar as they would be admissible into evidence.

### 3.   Unproduced Evidence and Uncertified Deposition Transcript

Finally, Defendant argues that, in opposition to the instant motion, Plaintiff improperly relies upon:  (i) evidence not produced during the course of discovery; and (ii) an uncertified deposition transcript of non-party Victoria Dinielli.  Def.'s Reply Mem. at 2-3.  However, Fed. R.

Civ. P. 56 "allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S. Ct. 2548, 2554 (1986) (citing Fed. R. Civ. P. 56(f)). As this case is presently at the summary judgment stage, and not the trial stage, it is appropriate "that all relevant factual material be placed before the trial court before summary disposition is granted or denied." *See EMI Entm't World, Inc. v. Karen Records, Inc.*, No. 05 Civ. 390, 2008 WL 1986243, at *1 (S.D.N.Y. May 5, 2008) (denying motion to preclude evidence not produced during discovery in deciding a motion for summary judgment). Therefore, in deciding the instant motion, the Court will not preclude materials not produced during the course of discovery or Dinielli's uncertified deposition transcript.

## B. <u>Section 1983 Claim</u>

### 1. <u>Legal Standard</u>

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Section 1983 itself does not create substantive rights; rather, "it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993); *see also Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("[Section 1983] merely provides a method for vindicating federal rights elsewhere conferred . . . .") (internal quotation omitted). Therefore, to prevail on a claim arising under Section 1983, a plaintiff must establish: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011).

16

A municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978); *see also Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. 2013) ("[A] municipal entity may only be held liable where the entity itself commits a wrong; a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (internal quotation omitted). Rather, a municipality may only be held liable under Section 1983 "if the deprivation of the plaintiff's rights under federal law [was] caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Pipitone v. City of New York*, 57 F. Supp. 3d 173, 194 (E.D.N.Y. 2014) ("Municipalities can only be held liable under § 1983 when they are a 'moving force' behind the constitutional deprivation."); *DeJesus v. Vill. of Pelham Manor*, 282 F. Supp. 2d 162, 175 (S.D.N.Y. 2003) (holding that a plaintiff "must demonstrate a causal connection between the policy at issue and the unconstitutional acts committed by the municipality's agent"). The policy or custom resulting in the deprivation of a constitutional right need not be explicit for purposes of liability arising under Section 1983. *See Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). A plaintiff may satisfy the "policy or custom" requirement by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policy makers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 438 (E.D.N.Y. 2016); *see also Davis v. City of New York*, 959 F. Supp. 2d 324, 338 (S.D.N.Y. 2013) (holding that a policy or custom may be inferred by constitutional violations that are so "persistent and widespread" that

they "practically have the force of law"); *Lovell v. Comsewogue Sch. Dist.*, 214 F. Supp. 2d 319, 324 (E.D.N.Y. 2002) ("It can be the result of an informal practice, so long as the discriminatory practices are persistent and widespread so as to constitute a custom or usage with the force of law.") (internal quotation omitted).  However, it is well established that "'a single incident involving an employee below the policymaking level will not suffice to support an inference of municipal custom or policy.'"  *Brewster v. Nassau Cty.*, 349 F. Supp. 2d 540, 549 (E.D.N.Y. 2004) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995)).

As discussed above, Plaintiff alleges that Defendant violated her rights arising under the First Amendment by retaliating against her in response to:  (i) "her speech and associational conduct as it relates to Resolution 18/44" at the Village's May 28, 2012 Memorial Day parade; and (ii) her "political support of Andrew Hardwick during the 2013 election."[3]  Pl.'s Opp'n at 12.

### 2. First Amendment Retaliation

To prevail on a First Amendment retaliation claim, the plaintiff "must set forth evidence demonstrating (1) he engaged in protected First Amendment activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."  *Rolon v. Ward*, 345 F. App'x 608, 610 (2d Cir. 2009); *see also Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 253 (2d Cir. 2006) ("Taking adverse employment action against a non-policymaking employee for political reasons is a violation of that employee's First Amendment rights.").  However, even where the plaintiff demonstrates a

---

[3] Defendant argues that Plaintiff's claim regarding the 2012 Memorial Day parade was dismissed by this Court's April 12, 2016 Order adopting Magistrate Judge Shields' Report and Recommendation.  *See* Def.'s Reply Mem. at 6.  However, Magistrate Judge Shields did not specifically recommend that Plaintiff's claim regarding the 2012 Memorial Day parade be dismissed.  *See Skates v. Inc. Vill. of Freeport*, No. 15-CV-1136, 2016 WL 1459659, at *18 (E.D.N.Y. Jan. 28, 2016).  Rather, Magistrate Judge Shields observed that, Plaintiff's allegation that she "was transferred within one month of her support for the losing mayoral candidate, against the backdrop of a prior indication that members of the Village Board frowned upon her earlier signature collection, state[d] a plausible claim for retaliation."  *Id.*

*prima facie* case of First Amendment retaliation, "a government defendant may still receive summary judgment if it establishes its entitlement to a relevant defense." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 119 (2d Cir. 2015). Specifically, a government defendant is entitled to summary judgment where it can show by a preponderance of the evidence "that it would have undertaken the same adverse employment action 'even in the absence of the protected conduct.'" *Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir. 1994) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977)). In moving for summary judgment, Defendant does not dispute that Plaintiff engaged in constitutionally protected First Amendment activity. *See* Def.'s Mem. at 3-5. Rather, Defendant argues that: (i) Plaintiff "cannot prove a causal connection between her transfer to the Recreation Center and her campaigning on behalf of Andrew Hardwick"; and (ii) the Village was justified in transferring Plaintiff to the FRC because "abolishing the practice of allowing individuals to perform 'out-of-title' work, a practice that is unlawful, constitutes a legitimate non-retaliatory reason for Plaintiff's transfer." *Id.*

To demonstrate a causal connection between a constitutionally protected activity and an adverse employment action, "a plaintiff must show that the protected speech was a substantial motivating factor in the adverse employment action." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 167 (2d Cir. 2006) (internal quotation omitted). A plaintiff may establish a causal connection between constitutionally protected activity and an adverse employment action "by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). Although, the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," *Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d

Cir. 2001), the period of temporal proximity is "measured from the date of the 'employer's knowledge of the protected activity.'"  *Kim v. Columbia Univ.*, 460 F. App'x 23, 25 (2d Cir. 2012) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001)). However, it is axiomatic that "[a] First Amendment retaliation claim does not exist where the defendants had no knowledge of the allegedly protected speech."  *Kilduff v. Rochester City Sch. Dist.*, 53 F. Supp. 3d 610, 617 (W.D.N.Y. 2014).

Defendant is entitled to judgment as a matter of law with respect to Plaintiff's claim for First Amendment retaliation.  As an initial matter, insofar as Plaintiff's claim is based upon her constitutionally protected activity at the Village's 2012 Memorial Day parade, there is no evidence that Skates actually suffered an adverse employment action as a result of collecting signatures in support of Resolution 18/44.  Even accepting as true Plaintiff's contention that Trustee Martinez stated that people like Plaintiff should not work for the Village,[4] *see* Pl.'s 56.1 Stmt. ¶¶ 3-5, it is undisputed that the Village neither terminated Plaintiff nor formally reprimanded her in any manner as a result of her protected activity at the parade.  Indeed, at her N.Y. Gen. Mun. Law § 50(h) examination under oath, Plaintiff testified that she was never "disciplined in connection with [the] incident at the Village board meeting," and that she continued to work for the Village for over a year until October 21, 2013.  *See* Panico Decl. Ex. A ("Pl.'s 50(h) Dep.") at 64:10-65:3-5. As Plaintiff did not suffer an adverse employment action as a result of her protected activity at the 2012 Memorial Day parade, her activity in support of Resolution 18/44 is insufficient to establish

---

[4] In support of her contention that Trustee Martinez stated that people like Plaintiff should not work for the Village, Plaintiff claims to rely upon a video recording of the Village's June 2012 public meeting.  *See* Pl.'s 56.1 Stmt. ¶ 4; Henry Decl. Ex. Y.  However, Plaintiff did not submit any recording in opposition to the instant motion.  *See* Henry Decl. Ex. Y; *see also Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) ("In order to defeat a properly supported summary judgment motion, the opposing party must proffer admissible evidence that sets forth specific facts showing a genuinely disputed factual issue that is material under the applicable legal principles.") (internal quotation and alteration omitted); *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 151 (2d Cir. 2007) ("[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment.").

a claim for First Amendment retaliation.  *See Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010)

("It goes without saying that retaliation cannot be established where no adverse action has been

alleged.").  Furthermore, although Plaintiff alleges that she suffered adverse employment actions

upon her transfer to the FRC in April 2013, Plaintiff is unable to establish that any such adverse

actions are causally related to her protected activity at the 2012 Memorial Day parade.  First, as

Plaintiff concedes that she was not transferred to the FRC until April 2013, any adverse

employment actions suffered thereafter are too temporally removed from the May 2012 Memorial

Day parade to support an inference of causation.  *See, e.g.*, *Hollander v. Am. Cyanamid Co.*, 895

F.2d 80, 85-86 (2d Cir. 1990) (holding that the passage of three (3) months was too long to suggest

a causal relationship in a First Amendment retaliation claim); *Ruhling v. Tribune Co.*, No. 04-CV-

2430, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (holding that "a passage of two months

between the protected activity and the adverse employment action seems to be the dividing line").

Moreover, Plaintiff fails to identify evidence that anyone who allegedly took adverse employment

actions against her had knowledge of her protected activity at the 2012 Memorial Day parade.  *See*

*Kilduff*, 53 F. Supp. 3d at 617.  Although Plaintiff testified that she believed that she gave her

completed signature sheet "to one of the individuals that was collecting signatures" with her, she

conceded that she did not "hand it in to anyone at the village," and she fails to identify anyone

within the Village other than Martinez, Pineyro, and Richardson who was aware of her protected

activity at the parade. Pl.'s Dep. 87:6-17.  As any alleged adverse employment action lacks the

requisite temporal proximity to Plaintiff's constitutionally protected activity at the 2012 Memorial

Day parade, and because Plaintiff fails to identify individuals who took adverse employment

actions against her who were aware of her protected activity at the parade, she is unable to establish

that she suffered an adverse employment action that was causally related to her protected activity at the 2012 Memorial Day parade.

Insofar as Plaintiff's First Amendment retaliation claim is premised upon her support of Hardwick in the Village's mayoral election, Defendant is also entitled to judgment as a matter of law, as there is no evidence that anyone who took adverse employment actions against Plaintiff, including Kennedy and Dinielli, was aware of Plaintiff's support of Hardwick or investigation of Kennedy.  Plaintiff claims that her investigation of Kennedy "resulted in uncovering discrepancies [in] . . . Kennedy's property, as well as a finding of illegal signatures in connection with his election . . . ."  Pl.'s 56.1 Stmt. ¶ 8.  According to Plaintiff, Kennedy "wanted [her] in the rec center as a form of punishment" for "finding information on him, not supporting him, [and] working against his election."  Pl.'s Dep. 117:10-17.  However, at her deposition, Plaintiff conceded both that she was unaware of whether Kennedy knew that she was investigating him, and that she had "no idea if [Kennedy] specifically knew [Plaintiff] was reviewing his petitions."  *Id.* at 103:4-10, 106:19-24.  Indeed, Skates further testified that neither Kennedy, Dinielli, nor anybody else told her that Kennedy sought to punish her for her protected activity in support of Hardwick.  *Id.* at 118:15-19.  Rather, when asked how she knew that Kennedy "transferred [her] as a form of punishment," Plaintiff responded that she "was told by [her] spirituality," and that her spirituality "show[ed] [her] things that were to come."  *Id.* at 119:10-120:25.  As Plaintiff fails to identify any admissible evidence suggesting that Kennedy or any other individual within the Village who allegedly took adverse employment actions against her had knowledge of her protected activity related to the mayoral election, she fails to raise a genuine issue of triable fact with respect to whether an adverse employment action was causally related to her activity in connection with the election.[5]  *See*

---

[5] Although Plaintiff alleges that she informed a woman named Cheryl about the results of her investigation, and that she "reviewed the petitions that were questionable in the presence of employees of the Village," she does not

*Kilduff*, 53 F. Supp. 3d at 617; *see also Louis v. Metro. Transit Auth.*, 145 F. Supp. 3d 215, 224 (E.D.N.Y. 2015) ("A plaintiff must prove that the defendant acted with specific intent to punish the protected activity . . . ."); *Rebrovich v. Cty. of Erie*, 544 F. Supp. 2d 159, 171-72 (W.D.N.Y. 2008) ("Plaintiff's lack of knowledge as to whether [an individual] knew of his protected speech with authorities is not sufficient to raise a genuine issue of fact."); *cf. Dingle v. City of New York*, No. 10 Civ. 4, 2011 WL 2682110, at *7 (S.D.N.Y. July 7, 2011) (holding that an issue of fact precluded summary judgment where the defendant's "knowledge of plaintiff's [protected activity was] in dispute").  Therefore, Plaintiff's First Amendment retaliation claim fails as a matter of law.

In opposition to the instant motion, Plaintiff relies upon *Lynch v. Ackley*, No. 12-CV-537, 2014 WL 4782812 (D. Conn. Sept. 24, 2014), in support of her argument that "an accumulation of 'seemingly minor incidents' may combine to establish a 'critical mass' sufficient to establish a retaliation claim."  Pl.'s Opp'n at 18.  Plaintiff argues that she "has demonstrated a series of adverse actions which individually may not satisfy the adversity threshold; however as a whole create a material question of fact as to whether Plaintiff's workplace deteriorated to the point of adversity."  *Id.*  Specifically, Plaintiff argues that:  (i) Trustee Martinez "scrutinized [and] ridiculed [her] in public," suggesting that she should no longer be employed by the Village; (ii) Defendant transferred and demoted her from an administrative position in the Assessor's Office to a janitorial position in the FRC; (iii) Dinielli wrongfully discussed personal matters relating to Plaintiff's vacation days and comp time in the presence of Skates' co-workers; (iv) Kirwan instructed Dinielli to "wrongfully strip Skates of accumulated comp time"; (v) Dinielli "banished [Plaintiff] to the exercise room"; (vi) Dinielli denied Plaintiff a key card to an employee parking lot; (vii) Dinielli

---

allege that Cheryl or any employees who witnessed Plaintiff reviewing petitions took adverse action against her or informed anyone else within the Village of Plaintiff's protected activity.  *See* Pl.'s 56.1 Stmt. ¶ 8; Pl.'s Dep. 102:17-103:3.

wrongfully wrote Plaintiff up for insubordination; and (viii) Dinielli changed Plaintiff's schedule to include shifts on Sundays.  *Id.*.; *see also* Pl.'s 56.1 Stmt. ¶¶ 12-20.  As an initial matter, although "a combination of seemingly minor incidents can form the basis of a constitutional retaliation claim once they reach a critical mass," *Bowen–Hooks v. City of New York*, 13 F. Supp. 3d 179, 240 (E.D.N.Y. 2014), no such "critical mass" exists here, as certain of the "series of adverse actions" Plaintiff identifies were not actually adverse.  *See Tepperwien v. Energy Nuclear Operations, Inc.*, 663 F.3d 556, 572 (2d Cir. 2011) (holding that there was no adverse action where "[i]ndividually the actions were trivial, and placed in context they remain[ed] trivial"); *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 265 (E.D.N.Y. 2012) (holding that "minor events" were insufficient to demonstrate an adverse action because "no such 'critical mass' exist[ed]").  For example, although Plaintiff claims that "Victoria Dinielli threatened to take accumulated time away from [Plaintiff] for failure to produce her attendance card," *see* Pl.'s 56.1 Stmt. ¶ 17, Plaintiff testified that she was actually "granted all of the time that [she] requested in terms of vacation time, sick leave, and personal and comp time."  Pl.'s Dep. 114:17-21.  Similarly, although Dinielli initially "changed [Plaintiff's] work schedule to include Sundays," Dinielli testified that she was unaware of Plaintiff's religious conflict, and Plaintiff concedes that Dinielli eventually "adjusted [her] schedule to allow for Sundays off," and that she never actually had to work on a Sunday.  *See* Pl.'s 56.1 Stmt. ¶ 20; Henry Decl. Ex. AA ("Dinielli Dep.") at 102:20-23; Pl.'s Dep. 173:14-174:3.  Nevertheless, even assuming the actions Plaintiff identifies were sufficiently adverse, as discussed above, Plaintiff's claim for First Amendment retaliation fails as a matter of law as there is no evidence that the individuals taking any such adverse employment actions were aware of Plaintiff's constitutionally protected activity.  *See Kilduff*, 53 F. Supp. 3d at 617; *Rebrovich*, 544 F. Supp. 2d at 171-72.

Based upon the foregoing, Defendant is entitled to judgment as a matter of law with respect to Plaintiff's claim for First Amendment retaliation.[6]

## C. **FMLA Claim**

### 1. FMLA Legal Framework

The FMLA "affords eligible employees an 'entitlement' to twelve weeks of unpaid leave per year." *DiGiovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 196 (S.D.N.Y. 2009) (quoting 29 U.S.C. § 2612(a)(1)).  An employee's entitlement to unpaid leave under the FMLA is triggered by, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of his or her position."  29 U.S.C. § 2612(a)(1)(D).  At the end of the period of unpaid leave provided for under the FMLA, "the employee has the right to be restored to the position, or its equivalent, that he or she held prior to taking leave."  *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 534 (S.D.N.Y. 2009) (citing 29 U.S.C. § 2614(a)(1)).  However, "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA."  *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2d Cir. 1999).  Furthermore, "if the employee does not return to work—for whatever reason—the employer can replace the employee, as long as the employer is not doing so to punish the employee for exercising her FMLA rights."  *Reilly*, 620 F. Supp. 2d at 534.  Pursuant to the FMLA, it is illegal for an employer to:  (i) "interfere with, restrain, or deny the exercise or the attempt to exercise any right" provided by the FMLA; and (ii) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.  29 U.S.C. §

---

[6] Having concluded that Plaintiff is unable to demonstrate the requisite causation necessary to establish a *prima facie* case of First Amendment retaliation, the Court need not address Defendant's additional argument that each of the Village's allegedly adverse employment actions were justified.  *See* Def.'s Mem. at 4-5.

2615(a).   Therefore, in analyzing claims arising under the FMLA, the "Second Circuit has recognized two types of FMLA claims—'interference' claims and 'retaliation' claims." *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 463 (S.D.N.Y. 2011).

Although Plaintiff argues that Defendant both interfered with her rights arising under the FMLA and retaliated against her for exercising her rights arising under the FMLA, *see* Pl.'s Opp'n at 22-27, Plaintiff did not plead a cause of action for FMLA interference in her Complaint.  *See* Compl. ¶¶ 126-48.  Rather, in her Complaint, Plaintiff only asserted a claim for FMLA retaliation, alleging that she suffered damages "[a]s a proximate result of Defendant's discriminatory acts as committed against Plaintiff on the basis of her exercise of rights under the FMLA . . . ."  *Id.* at ¶ 148.  Despite Plaintiff's argument in opposition to the instant motion that Defendant interfered with her rights arising under the FMLA, it is well established that "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment."  *Bonnie & Co. Fashions, Inc. v. Bankers Tr. Co.*, 170 F.R.D. 111, 119 (S.D.N.Y. 1997); *see also Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim."); *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 408 (S.D.N.Y. 2000) ("[T]his Court will not consider claims not pleaded in the Complaint.").  As Plaintiff did not assert a claim for FMLA interference in her Complaint, the Court considers only whether Plaintiff has raised a triable issue of fact with respect to her claim for FMLA retaliation.

### 2.   FMLA Retaliation

Claims of FMLA retaliation are analyzed under the *McDonnell–Douglas* burden-shifting framework.  *See Colon v. Fashion Inst. of Tech. (State Univ. of New York)*, 983 F. Supp. 2d 277, 287 (S.D.N.Y. 2013); *see also McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.

Ct. 1817, 1824-25 (1973) (establishing the burden-shifting framework applicable to claims for FMLA retaliation).  Under the *McDonnell–Douglas* burden-shifting framework, the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation under the FMLA.  *See McGuiness v. East West Indus.*, 857 F. Supp. 2d 259, 264 (E.D.N.Y. 2012) (observing that, under the *McDonnell–Douglas* framework "the plaintiff bears the initial burden of showing a *prima facie* case of discrimination").  If the plaintiff satisfies its initial burden of establishing a *prima facie* case, "the burden of production then shifts to the employer to 'articulate a legitimate, clear, specific, and non-discriminatory reason' for its actions."  *Esser v. Rainbow Advert. Sales Corp.*, 448 F. Supp. 2d 574, 581 (S.D.N.Y. 2006) (quoting *Quarantino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995)).  If the employer satisfies its burden of articulating a non-discriminatory reason for its actions, "the presumption of discrimination drops out and the plaintiff has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination."  *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993)).  To demonstrate a *prima facie* case of retaliation under the FMLA, the plaintiff must establish that:  "(1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).

Defendant is entitled to judgment as a matter of law with respect to Plaintiff's FMLA retaliation claim.  In moving for summary judgment, the Village argues that Plaintiff: (i) did not exercise her rights arising under the FMLA; (ii) was not qualified for a position in the Assessor's Office; and (iii) is unable to demonstrate that her termination was causally connected to her alleged request for FMLA leave.  Def.'s Mem. at 7-11.  However, even assuming Plaintiff satisfied her

initial burden in demonstrating a *prima facie* case of FMLA retaliation, Defendant has proffered two (2) legitimate, non-discriminatory reasons for terminating Plaintiff.  Specifically, Defendant argues that Plaintiff was terminated because of:  (i) her "constant failure to comply with the Village time and leave policy, despite repeated warnings"; and (ii) Plaintiff's "discriminatory hostility . . . demonstrated toward her co-workers and toward the patrons of the Recreation Center."  *Id.* at 8. In response to Defendant's reasons for terminating Plaintiff, Skates fails to satisfy her burden in demonstrating that the Village's proffered reasons were pretextual, and she therefore is unable to defeat Defendant's motion for summary judgment.  *See Nagel v. Cty. of Orange*, No. 09 Civ. 9960, 2013 WL 1285465, at *3 (S.D.N.Y. Mar. 28, 2013) (holding that, to defeat a motion for summary judgment, the plaintiff "need not show that the defendant's proffered reason was false or played no role in the decision to terminate [her], but only that it was not the only reason, and that h[er] filing for FMLA leave was at least one motivating factor").

In support of its proffered non-discriminatory reasons for terminating Plaintiff, Defendant submitted the Charges and Specifications outlining the bases for Plaintiff's termination, which include, *inter alia*, Plaintiff's:  (i) failure to call in to work or notify the Village of her absences; and (ii) misconduct, incompetence, gross misconduct, and conduct unbecoming of an employee related to Skates' discriminatory hostility toward her co-workers and FRC patrons.  *See* Kirwan Decl. Ex. L.  With respect to Plaintiff's failure to comply with the Village's time and leave policy, the evidence submitted in support of the instant motion demonstrates that, although a doctor's note stated that Plaintiff was able to return to work on June 19, 2013, she did not return to work until July 8, 2013, and she failed to contact anyone from the Village regarding her absence.  Def.'s 56.1 Stmt. ¶¶ 14-20.  After being suspended for two (2) days, Plaintiff continued to violate the Village's absence policy by failing to provide prior notice on days on which she would be absent from or

late to work, including on July 15, 2013, September 21, 2013, September 23, 2013, September 27, 2013, October 10, 2013, October 17, 2013, and October 22, 2013.  *See* Kirwan Decl. ¶ 18. Likewise, with respect to Plaintiff's discriminatory hostility toward her co-workers and FRC patrons, the evidence submitted in support of the instant motion demonstrates that in October 2013, the Village's Human Resources Department received reports that "Plaintiff made numerous discriminatory statements during her employment at the Recreation Center."  Def.'s Mem. at 8. Specifically, the evidence demonstrates that Plaintiff:  (i) told Adams, "you can't trust white people"; (ii) referred to Adams as a "whitey lover"; (iii) criticized Groden for taking tomatoes from a white person, stating "I can't believe you'll take food from a white person"; (iv) referred to a Hispanic co-worker as a "spickola"; and (v) referred to a patron of the FRC as a "Jew bitch." Def.'s 56.1 Stmt. ¶¶ 19-24.  The evidence further demonstrates that Adams and Groden made written statements informing the Village of Plaintiff's comments.  *Id.* at ¶25.  Defendant's proffered reasons, as well as the evidence submitted in support thereof, are sufficient to rebut any presumption of discriminatory intent in terminating Plaintiff.  *See Hill v. New York City Housing Auth.*, 220 F. Supp. 3d 499, 508 (S.D.N.Y. 2016) (holding that the plaintiff's poor work performance was not pretextual and was a legitimate, non-discriminatory basis for terminating her employment); *McGuiness*, 857 F. Supp. 2d at 265 (holding that the defendant proffered a non-discriminatory basis for terminating the plaintiff based upon the "Plaintiff's substandard performance at work, including extended absences"); *Cooper v. New York State Nurses Ass'n*, 847 F. Supp. 2d 437, 449 (E.D.N.Y. 2012) (holding that the defendant's "decision to terminate plaintiff for insubordination [was] legitimate and non-discriminatory on its face").

In opposition to the instant motion, Plaintiff fails to demonstrate by a preponderance of the evidence that Defendant's proffered reasons for terminating Plaintiff were merely pretextual.

Instead, citing no specific evidence, Skates argues in conclusory fashion that "Defendant['s] pretextual basis for terminating Plaintiff's employment must also be ignored."  Pl.'s Opp'n at 26. However, in order to rebut an employer's proffered nondiscriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight."  *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988); *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars would necessitate a trial in all cases."); *Rinaldi v. Quality King Distribs., Inc.*, 29 F. Supp. 3d 218, 231 (E.D.N.Y. 2014) (holding that the plaintiff's "speculative argument that her termination 'must have been' related to her FMLA absences [was] insufficient at the summary judgment stage"); *Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*, 862 F. Supp. 2d 311, 320 (S.D.N.Y. 2012) (granting the defendant's motion for summary judgment where the plaintiff failed to rebut the defendant's proffered non-discriminatory reason for terminating the plaintiff).  As Plaintiff fails to present evidence contradicting Defendant's proffered legitimate, non-discriminatory reason for terminating Plaintiff, she has failed to satisfy her burden.  Therefore, Defendant's motion for summary judgment is granted with respect to Plaintiffs' claim for FMLA retaliation.

## IV.    CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 is granted in its entirety.  The Clerk of the Court is directed to enter judgment in favor of Defendants and to close this case.

Dated: Central Islip, New York          **SO ORDERED.**
      June 28, 2017

                                      *s/ Sandra J. Feuerstein*
                                      Sandra J. Feuerstein
                                      United States District Judge